## CHASE et al. v. SPORN et al.

No. 14070—Opinion Filed March 11, 1924.

### Mortgages—Foreclosure—Set-Off in Equity —Conditions Requisite.

Where, in an action upon purchase money notes and to foreclose mortgages securing same, defendants pleaded as a set-off a claim for lost profits on the sale of an oil and gas lease by reason of a cloud on the title to a part of the land, and the proof shows that the cloud was removed by plaintiff within a reasonable time after it was brought to his attention, and where the proof further shows that there was no sale of the lease, nor any enforceable contract for its sale, to one who was ready and able to buy except for the cloud on the title, no legal claim is shown which would constitute a set-off or counterclaim, and, since equity follows the law, no right to equitable relief is shown in the absence of proof of fraud, or in the absence of proof from which strong inferences of fraud may be drawn. Defendants, having had the peaceable and quiet possession of the premises, and the use, income, and profits thereof for several years without paying the interest and taxes, are vulnerable in a court of equity on such a set-off.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by William Sporn against Birt Chase and Nannie Chase et al., to recover upon certain promissory notes and to foreclose two mortgages. Decree for plaintiff, and defendants Birt Chase and Nannie Chase appeal. Affirmed.

This action was commenced in the district court of Lincoln county, January 25, 1922, by William Sporn against Birt Chase and Nannie Chase to recover upon certain promissory notes executed by Birt Chase and Nannie Chase in favor of the said William Sporn, and to foreclose two certain real estate mortgages. C. C. Richardson and the trustees of the Magnolia Petroleum Company were made defendants by reason of certain interests which they claimed, but their rights are not involved in this appeal. The petition contained three counts, the first of which was upon an unsecured note executed by Birt Chase and Nannie Chase for the sum of $591, but as judgment was

rendered by the trial court in favor of the defendants upon this count It will not be necessary to further consider it here. The second and third counts of the petition were in the usual form upon promissory notes and to foreclose mortgages securing the same. The second count covered a series of nine notes for $1,000 each and the mortgage securing the same given for the purchase money of the west half of section 23, township 16 north, range 3 east, and containing 320 acres, more or less. The third cause of action was upon a note for $4,500 and to foreclose a mortgage securing the same being for the purchase price of the east half of section 22, township 16 north, range 3 east, and containing 320 acres, more or less. For their answer to the second and third counts of the petition the defendants Birt Chase and Nannie Chase alleged in substance that at the time of the conveyance of the east half of section 22, the plaintiff, William Sporn, was not the owner of the southeast quarter of said section 22, but that title thereto was in John C. Anderson; that defendants were ignorant of this fact until in November, 1920, when they had an opportunity to lease the entire 640 acres for oil and gas purposes for a consideration of $10 per acre, and that by reason of the cloud on the title to the southeast quarter of section 22 said lease was not sold; that thereafter they did sell a lease on 80 acres, being the northeast quarter of section 22, for the sum of $10 per acre, and that by reason of these facts they were damaged in the sum of $5,600, and pray that this amount be credited upon the indebtedness due to the plaintiff and that they be decreed not in default as to said mortgage indebtedness, and that the action be dismissed. They also filed a cross-petition which related to plaintiff's first cause of action and is, therefore not material here for the reasons above stated. Reply was filed to this answer.

Trial was commenced April 3, 1922, before the court without a jury, and hearing of the testimony was adjourned from time to time but finally completed on April 26, 1922, whereupon the court took the same under advisement and thereafter, on July 13, 1922, rendered a final judgment in the action in favor of the defendants Birt Chase and Nannie Chase upon plaintiff's first cause of action, and in favor of the plaintiff, William Sporn, against the defendants upon the second and third causes of action, and decreeing a foreclosure of the mortgage upon the two half sections of land. After unsuccessful motion for new trial, the defendants Birt Chase and Nannie Chase have brought the case here for review by petition in error with case-made attached. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

Geo. A. Henshaw and A. Carey Hough, for plaintiffs in error.

Jarrett & Speakman and Rittenhouse & Rittenhouse, for defendants in error.

Opinion by LOGSDON, C. Three contentions are made by defendants in their brief and these propositions are stated as follows:

"First. Defendant should have had credit for amount lost in sale of lease through undisclosed defect in title; they would not then have been in default nor subject to foreclosure.

"Second. Plaintiff's conduct in failing to disclose to defendants the true state of the title is such as to preclude him from coming into equity for affirmative relief. Furthermore, he who seeks equity must do equity. Plaintiff should first clear the title conveyed by him before seeking a decree of foreclosure. The judgment is not based on sufficient equity and should be reversed.

"Third. The court erred in refusing to make Anderson a party to the suit for the purpose of clearing up any outstanding title existing in him by reason of prior deeds. This is a condition precedent to any affirmative relief on behalf of plaintiff."

As the first and second propositions are related and interdependent, they may best be considered together. It is insisted by defendants that they are entitled to an equitable set-off against the claims of plaintiff for the sum of $5,600 which they claim was lost to them by reason of the cloud on the title to the southeast quarter of section 22, and that if such set-off be allowed there would be no default in the terms and conditions of the mortgages sought to be foreclosed in the action, and that plaintiff would not be entitled to maintain the same. The facts upon which this contention is based are, substantially, that in August, 1913, William Sporn and John C. Anderson, being close personal friends and business associates, each executed to the other deeds covering all lands owned by each. These deeds so exchanged were to be withheld from record until one or the other of the parties should die, and in the event of the death of either the survivor should then place the deeds from the deceased of record and distribute the lands covered thereby in conformity with directions which each had given the other. It seems that this arrangement was made by Sporn and Anderson to obviate the necessity and expense of administration. However, this arrangement between these parties was abrogated in 1918, and Sporn destroyed all deeds made to him by Anderson, and Anderson represented to Sporn that he had

destroyed all deeds given by Sporn. The deeds which Sporn had given to Anderson included the lands conveyed by Sporn to Birt Chase and Nannie Chase. The deed from Sporn to Chase covering the east half of section 22 was executed in April, 1918. This deed included the southeast quarter of section 22, and was recorded August 15, 1918. Thereafter, on October 19, 1918, John C. Anderson placed of record the deed of August 20, 1913, from William Sporn covering the southwest quarter of section 14 and the southeast quarter of section 22. The existence of this deed was unknown to the defendants and was believed by the plaintiff to have been destroyed by Anderson, and neither knew differently until in November, 1920, when Chase executed a lease for oil and gas purposes on the entire 640 acres purchased by him from Sporn and delivered the same to one Chas. J. White to sell at $10 per acre. White had the abstract brought down to date and the existence of this deed was thus disclosed. When this matter was brought to the attention of Sporn he explained the situation to Chase and told him that he would clear up the title if it took every dollar he had, and he obtained a quitclaim deed from Anderson in January, 1921.

Equity follows the law, and unless the facts above stated would authorize a set-off as a matter of law equity will not go further, in the absence of fraud, embarrassment in enforcing the demand at law, or special circumstances, such as insolvency or nonresidence, rendering it inequitable to refuse relief. Caldwell v. Stevens, 64 Okla. 287, 167 Pac. 610; Scrivner v. McClelland, 75 Okla. 239, 182 Pac. 503. No contention is made that Anderson had any right, title, or interest under the deed which he wrongfully recorded. Comp. Stat. 1921, section 5251. No claim is made that defendant was ever disturbed in his quiet and peaceable possession of the premises. Comp. Stat. 1921, section 5259. It is clearly shown that Sporn made his warranty good by securing quitclaim deed from Anderson within a reasonable time after being advised of the wrongful recording of Anderson's deed. Comp. Stat. 1921, section 5257-58. Certainly these facts do not show fraud or even a strong inference thereof. Sporn is a resident of Lincoln county and is solvent. In this condition of the record no equitable considerations impel an extension of the rules of law. Therefore, the question is, could this claim be set off as a matter of law? The facts in evidence must be decisive of this question.

Chas. J. White, to whom the defendants claim to have sold the lease, is wholly without interest, being a resident of California, and was tendered as a credible witness by the defendants. Upon the question of whether there was a sale of the lease he testified by deposition upon direct examination:

"Q. What was done with the oil and gas lease executed by Birt Chase and Nannie Chase, after the same had been duly executed and acknowledged by them? A. Delivered to me while I was negotiating a sale of same. Q. If, in answer to the last question, you state such leases were placed in the First State Bank of Chandler, Okla., to be held in escrow pending the examination of the title, will you also state whether or not the bonus money which you agreed to pay for these leases was also deposited in the First State Bank of Chandler? A. The First State Bank's records will show no such escrow record or deposit to cover this transaction, as these papers were placed with me merely as an agent. * * * Q. Will you state whether or not you were ready and willing to accept these leases and pay the bonus money upon the removal of cloud from the title to the S. E. ¼ 22, 16, 3 by reason of the former deed from William Sporn to John C. Anderson? A. I was willing to go ahead and try and sell these leases when title was clear. Q. Will you state whether or not you were at all times ready, able, and willing to pay the bonus of $10 per acre for oil and gas lease on this section of land when merchantable title thereto was shown by the abstracts duly brought down to date? A. I would have been ready to pay this amount upon sale of same. Q. Will you state whether or not you would have accepted the lease covering the entire section of land if Mr. Chase had been able to clear the cloud on the title to the one quarter section within the time fixed by you? A. I probably would have sold them if titles had been in shape." (C.-M. 210-14)

This testimony falls far short of showing a sale of the lease to Mr. White or to anyone else. At most it shows a strong probability that a sale might have been made had it not been for the wrongful act of Anderson in clouding the title to a quarter section. Before defendants could maintain an action on this claim, or be permitted to use it as a counterclaim or set-off it would be necessary for them to show a lease, or an enforceable contract for a lease, to one who was ready and able to consummate the transaction, and that the failure thereof was caused solely by the defective title.

Defendants invoke equity against plaintiff and urge that he seeks equity without doing equity; that he should have cleared their title before attempting to foreclose. As above shown, he did this in January, 1921, after discovery of Anderson's recorded deed in November, 1920. This action was not commenced until January 25, 1922.

Under the record here presented defendants do not show clean hands nor a desire to do equity. They have been in the peaceable and quiet possession of the E. ½ of sec. 22 since April, 1918. and have similarly possessed the W.½ of sec. 23 since October, 1919, enjoying the rents, income and profits therefrom. January 1, 1921. they owed plaintiff $540 interest on the purchase money notes; they owed 1920 taxes amounting to $263.45. February 2, 1921, they received $800 for an oil and gas lease on 80 acres of the land. They didn't use this to pay the interest, nor even a part of it to pay the taxes, but permitted the land to sell for the taxes. and plaintiff was compelled to redeem and to pay the interest and penalties. So the contention of defendants that if they had received $10 per acre for a lease on the entire 640 acres they would not have been in default at the commencement of this action may be least be considered cum grano saltis. Defendant Birt Chase testified that he bought the land for its oil lease value.

It thus appears that the judgment of the court is not erroneous as not being "based on sufficient equity."

Defendants' third proposition is entirely without support in the record. The journal entry (C.-M. 245) contains this recital:

"And thereafter on the 15th day of April 1922, said cause is by the court further continued until the 26th day of April, 1922; that the 26th day of April, 1922, the plaintiff appeared in person and by his attorneys, Jarrett & Speakman, and the defendants, Birt Chase and Nannie Chase, appeared in person and by their attorneys, Howard & Beets; thereupon the defendants, Birt Chase and Nannie Chase, complete the introduction of their evidence, and both parties having introduced all their evidence in chief and in rebuttal, rest, and upon application of the defendants, Birt Chase and Nannie Chase, it is ordered by the court that John C. Anderson be made a party defendant, and said cause further continued for service; thereafter on the 26th day of June, 1922, the said cause is by agreement between attorneys for defendants, Birt Chase and Nannie Chase, and attorneys for plaintiff set for argument and judgment on the 1st day of July, 1922, and that the court may vacate the order making John C. Anderson party defendant.

A litigant may not complain of action by the trial court to which he has agreed.

Finding ample evidence to authorize and sustain the finding and decree of the trial court, such decree should be in all things affirmed.

By the Court: It is so ordered.